**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

_____
                                        :
In re                                   :    Chapter 7
                                        :
SEAN DUNNE,                             :    Case No. 13-50484
                                        :
         Debtor.                        :
_____:

**STATEMENT IN SUPPORT OF DEBTOR SEAN DUNN'S**
**MOTION FOR STAY PENDING APPEAL**

Gayle Killilea Dunne ("Killilea") files this statement in support of the Debtor Sean Dunne's Motion For Stay Pending Appeal (the "Stay Motion"). While Killilea did not object to the Amended Motion Of Ulster Bank Ireland Limited For Entry Of An Order Granting Limited Relief From The Automatic Stay To Allow The Continuation Of The Irish Bankruptcy Proceedings (the "Ulster Motion"), she believes that there is a substantial possibility that this Court's order (the "Order") granting the Ulster Motion will be vacated and remanded for further proceedings. Ulster Bank of Ireland Limited ("Ulster") did not present any evidence in support of the Ulster Motion and, in light of Sean Dunne's (the "Debtor") objection to the Ulster Motion, Killilea believes that evidence was required. Killilea's concern now is that if a bankruptcy proceeding in Ireland is commenced while there is an appeal pending and the Order is vacated, it would not then be possible to stop or vacate the Irish proceeding, which will bring with it enormous additional cost and risk of inconsistent results. For her statement in support of the Stay Motion, Killilea respectfully states:

1.     On March 29, 2013 (the "Petition Date"), the Debtor filed a petition under chapter 7 of the United States Bankruptcy Code with this Court. No claim has been made that the

1

Debtor filed his petition improperly or that he is not eligible to be a chapter 7 debtor under the United States Bankruptcy Code. Richard Coan has been appointed as the chapter 7 trustee in this case. The Debtor's meeting of creditors has commenced. Killilea is the wife of and a creditor of the Debtor and a party in interest in this case.

2. On May 28, 2013, Ulster filed the Ulster Motion. In its motion, Ulster asserted that there was cause for relief from the automatic stay because (1) Ulster had commenced a bankruptcy proceeding in Ireland six weeks prior to the Petition Date and principles of comity dictate that the Court recognize and respect the proceeding in Ireland and (2) allowing a bankruptcy proceeding to move forward in Ireland would facilitate the efficient administration of the Debtor's case in the US and would not cause the Debtor any prejudice.

3. On June 3, 2013, the Debtor filed an objection to the Ulster Motion, and argued, <u>inter alia</u>, that there was no legal precedent for dual individual bankruptcy cases, that comity did not require that this Court grant relief from the automatic stay to allow a proceeding in Ireland to move forward and that without an appropriate protocol there would be gross inefficiencies involved with having two full blown bankruptcy cases in two countries and great prejudice to the Debtor.

4. On June 4, 2013, the Court held a hearing on the Ulster Motion. While Killilea did not object to the Ulster Motion, at the hearing on the Ulster Motion her counsel did express concern over the cost and the organization of the Debtor's bankruptcy proceedings. As it has become clear that what Ulster contemplates is a second full blown bankruptcy in Ireland, Killilea now is extremely concerned that two proceedings will be massively expensive and subject parties in interest to duplicative and inconsistent results. Of further concern is the suggestion by Ulster at the hearing on the Ulster Motion (not made in the motion itself), now made more clear

by NAMA's statement in opposition to the Stay Motion, that it wishes to use a proceeding in Ireland to seek to prevent the discharge of the Debtor under US law. Legal battles and delays over the Debtor's discharge may give Ulster some form of satisfaction, but will waste judicial resources and create unnecessary expense and not result in any greater financial recovery for Ulster or other creditors.

5. Ulster did not present any evidence in support of the Ulster Motion. At the end of a hearing consisting only of oral argument, the Court orally granted the Ulster Motion with an order to be submitted.

6. On June 12, 2013, the Court entered the Order. On June 14, 2013, the Debtor filed his notice of appeal from the Order and the Stay Motion.

7. Killilea believes that the Debtor has a substantial possibility of success on appeal. A bankruptcy court decision may be vacated and remanded for further proceedings when the court does not take evidence and make findings of fact where there are disputed issues of fact. Debaecke v. Esso Virgin Islands, Inc. (In re The Duplan Corp.), 212 F.3d 144, 156-57 (2nd Cir. 2000) ("These [factual] matters are disputed in this case, and thus require the bankruptcy court to make fact findings.").

8. Notwithstanding that the Debtor disputed that comity required the Court to grant relief from the automatic stay, Ulster did not present any evidence or even make any argument that would support a finding that comity dictates that result. International comity involves the discretion of a "court to decline to exercise jurisdiction over a case before it when that case is pending in a foreign court with proper jurisdiction." JP Morgan Chase Bank v. Altos Hornos De Mexico, S.A. De C.V., 412 F.3d 418, 424 (2nd Cir. 2005). The Supreme Court has defined comity as the "recognition which one nation allows within its territory to the legislative,

3

executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." Hilton v. Guyot, 159 U.S. 113, 164 (1895). Prior to the application of international comity, there must be a foreign proceeding and a "true conflict between American law and that of a foreign jurisdiction." In re Maxwell Communication Corp., 93 F.3d 1036, 1049 (2nd Cir. 1996). "Federal courts will recognize foreign bankruptcy proceedings provided the foreign laws comport with due process and fairly treat claims of local creditors." Insurance Co. of North America v. Salen Dry Cargo (In re Victrix Steamship Co.), 825 F.2d 709, 714 (2nd Cir. 1987). Courts in the Second Circuit focus on several factors as indicia of fairness under a foreign bankruptcy proceeding, including: "(1) whether creditors of the same class are treated fairly in the distribution of assets; (2) whether the liquidators are considered fiduciaries and are held accountable to the court; (3) whether creditors have the right to submit claims which, if denied, can be submitted to a bankruptcy court for adjudication; (4) whether the liquidators are required to give notice to the debtors' potential claimants; (5) whether there are provisions for creditors' meetings; (6) whether a foreign country's insolvency laws favor its own citizens; (7) whether all assets are marshaled before one body for centralized distribution; and (8) whether there are provisions for an automatic stay and for the lifting of such stays to facilitate the centralization of claims." Allstate Life Ins. Co. v. Linter Group Limited, 994 F.2d 996, 999 (2nd Cir. 1993), quoting Cunard S.S. Co. v. Salen Reefer Serv., 773 F.2d 452, 457 (2nd Cir. 1985).

9.    From the record on the Ulster Motion, it is not clear what portion of its jurisdiction over this case the Court has declined to exercise or even that there is in fact a case pending in Ireland. Ulster did not present any evidence, and the Court did not make any findings of fact, that there is a case pending in Ireland or regarding the factors enumerated by the Second

Circuit for determining whether application of comity in the bankruptcy context is appropriate. At the hearing on the Ulster Motion all parties in this case were, and as far as the undersigned is aware all parties still are, largely in the dark about the working of the Irish bankruptcy system, including matters of title over property, claims resolution, discharge, and avoidance type claims. Ulster did not present any evidence, or even statement of the law or the status of the case in Ireland from an Irish attorney.  Indeed, it is extremely unclear what exactly has happened in Ireland, whether a case in fact has been commenced, and what steps are needed or even scheduled.  While a July 1 hearing has been mentioned multiple times by Ulster, the undersigned checked the Irish High Court record and there is no mention of a hearing scheduled at any time. While there is a case number, as of June 19, 2013, on the record nothing had been "set down," there is no "setting down date," and no pleadings have been filed.  In particular, no "grounding affidavit" has been filed, which the undersigned understands to be a strict requirement to the commencement of bankruptcy proceedings in Ireland under the Irish Rules of the Superior Court. Furthermore, the proceedings have been allocated an "IA" case number by the central office of the Irish High Court, which the undersigned understands to mean that the proceedings have not been initiated and are classified as an "Intended Action" by the Irish Rules of the Superior Court.

10.     The publicly available information on the Irish proceedings appears to contradict the position taken by Ulster at the hearing on the Ulster Motion, which was that a bankruptcy case has been commenced and that the Irish courts have jurisdiction over the Debtor's Irish assets. No evidence was produced to support this assertion and the public record in fact indicates the opposite.

11.     Ulster also did not present any evidence regarding benefit to the administration of this case.  Ulster's motion seems to be predicated on the expectation that a cross-border protocol

will be negotiated to resolve jurisdictional and legal issues, of which there will be many. But, Ireland is not a signatory to the UNCITRAL Model Law On Cross Border Insolvency of 1997, which is implemented by Chapter 15 of the US Bankruptcy Code and is the basis for protocols governing cross-border insolvencies involving nations that are signatories, such as Canada, the US and the UK. Moreover, there is no provision in the Irish insolvency laws for the High Court's approval of any such protocol. Thus, there is an open question as to whether an Irish court would even have the authority to mandate the implementation of the contemplated cross-border protocol relied upon so heavily by Ulster. Ulster presented no evidence that granting relief from the automatic stay will make these proceedings more efficient, and given the foregoing, there is reason to believe that there may not be any lawful basis under Irish law for the coordination between two proceedings of the type proposed by Ulster, leading to massive expense and the risk of inconsistent results. Further, it is the undersigned's understanding that given the novel facts of this case, if the Debtor chooses to contest the proceedings in Ireland it could take many months for the proceedings there to move forward, and it could take many, many months of court hearings for the Debtor to be declared "bankrupt" in Ireland, if ever.

12. Killilea believes that there is a substantial possibility that an appellate court will find that in light of the Debtor's objection to the Ulster Motion Ulster was required to present evidence regarding, inter alia, the application of principles of comity, the actual status of the Irish proceedings and/or the efficiencies to be gained by having two full blown bankruptcy proceedings.

13. Killilea, and other parties in interest, will suffer substantial injury if a stay is not granted. Once a bankruptcy proceeding is commenced in Ireland, this or any other US court cannot make that proceeding go away. As discussed above, a second full blown bankruptcy

6

proceeding may bring substantial cost and the risk of inconsistent results. If that occurs, there will be no remedy for Killilea and other parties similarly impacted.

14. Ulster will suffer little or no prejudice by a stay. As has been noted, all of the properties which constitute Ulster's collateral are in receivership, and the Debtor has made clear that he would consent to relief from the automatic stay to allow Ulster to exercise its rights under Irish law. The hearing on July 1, assuming a hearing is scheduled, has already been continued several times, and there is no reason to believe that it cannot be continued again. Given the status of its collateral, Ulster has never enunciated a reason why it needs to have a full blown bankruptcy proceeding in Ireland, which will not realize any greater return for the Debtor's creditors. Killilea believes that Ulster's motives include a desire to use a proceeding in Ireland to circumvent the US laws governing the Debtor's discharge and to harass and embarrass the Debtor to the detriment of other creditors. Though Ulster claims that a proceeding in Ireland would make things more efficient, there has been no discussion of what would go in to a protocol (assuming there could be such a protocol), and as discussed herein, a second bankruptcy proceeding which is not coordinated with this proceeding would leave all parties in interest facing the prospect of lengthy and costly legal battles in two jurisdictions that will not lead to any greater recoveries for creditors.

15. The public interest weighs in favor of a stay. By granting relief from stay, this Court in some fashion declined to exercise jurisdiction over a case before it, and ceded some portion of its jurisdiction to a court in Ireland on the assumption that there is a case properly pending before that court. JP Morgan Chase Bank, 412 F.3d at 424. This was done without a full and fair presentation of the impact that this ceding of jurisdiction will have on this

7

bankruptcy case and the parties in interest in this case, a presentation of the type mandated by the Second Circuit in the Allstate case and other cases.

    WHEREFORE, Killilea requests that the Court grant the Stay Motion and grant her such other relief as is just.

    Dated at Hartford, Connecticut, this 21st day of June, 2013.

                           GAYLE KILLILEA DUNNE


                           By___/s/_____
                             Eric Henzy
                             Federal Bar No. ct12849
                             Reid and Riege, P.C.
                             One Financial Plaza
                             Hartford, CT  06103
                             (860) 278-1150
                             Fax: (860) 240-1002
                             ehenzy@rrlawpc.com