**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

_____X
In re:                                           :
                                                 :
Sean Dunne,                                      :    Case No. 13-50484
                                                 :    Chapter 7
         Debtor.                                 :
_____X

*Appearances:*

| | | |
|---|---|---|
| James Berman, Esq. | : | For the Debtor |
| Stephen M. Kindseth, Esq. | : | |
| Zeisler and Zeisler, P.C. | : | |
| 10 Middle Street, 15th Fl. | : | |
| Bridgeport, CT | : | |
| | | |
| Henry P. Baer, Esq. | : | For Ulster Bank Ireland Limited |
| Richard S. Gora, Esq. | : | |
| Finn Dixon & Herling, LLP | : | |
| 177 Broad Street, 15th Fl. | : | |
| Stamford, CT | : | |
| | | |
| Richard Coan, Esq. | : | For Richard M. Coan, Trustee |
| Timothy Miltenberger, Esq. | : | |
| Coan Lewendon Gulliver & Miltenberger, LLP | : | |
| 495 Orange Street | : | |
| New Haven, CT | : | |
| | | |
| Thomas H. Curran, Esq. | : | For National Asset Loan |
| Thomas J. Goodwin, Esq. | : | Management, Ltd. |
| McCarter & English, LLP | : | |
| Four Gateway Center | : | |
| 100 Mulberry Street | : | |
| Newark, NJ | : | |
| | | |
| Thomas J. Rechen, Esq. | : | |
| McCarter & English, LLP | : | |
| 185 Asylum Street, City Place I | : | |
| Hartford, CT | : | |

Alan H. W. Shiff, United States Bankruptcy Judge:

## MEMORANDUM OF DECISION AND ORDER ON DEBTOR'S MOTION FOR STAY PENDING APPEAL

### I. Introduction

On June 4, 2013, the Court granted Creditor Ulster Bank Ireland Limited's ("Ulster Bank") Amended Motion for Relief from Stay. Sean Dunne ("Debtor") has timely appealed (*see* "Notice of Appeal"; ECF No. 111) and seeks a stay pending appeal ("Motion for Stay Pending Appeal"; ECF No. 113 (hereafter, "Motion to Stay")). Ulster Bank, National Asset Loan Management Limited ("NALM"), an Irish governmental statutory entity, and the chapter 7 trustee, Richard M. Coan ("Trustee"), object. For the reasons that follow, the Motion to Stay is denied.

### II. Background[1]

Since the 1990s, the Debtor, primarily through his businesses, DCD Builders, Limited, and its subsidiaries (collectively, "DCD"), has been a real estate developer in Ireland. Over the years, Ulster Bank loaned substantial sums of money (over €400 million) to DCD in Ireland. The aggregate amount of debts owed by the Debtor is estimated to exceed € 700 million. In 2008 and 2009, NALM acquired a number of loans given to DCD by other lenders.

In 2011 and 2012, Ulster Bank and NALM, respectively, caused receivers to be appointed in Ireland over all of their real property collateral. Substantially all of the Debtor's real property, whether owned directly or through a corporate entity, is over-encumbered by creditors' secured claims, with Ulster Bank and NALM having the largest of such claims.

---

[1] The court partially draws from the Debtor's representations made in the "Background" section of his Motion to Stay (*see* Part I "Background"), which the Trustee has adopted in his opposition papers (*see* Trustee's Opp'n at 1; ECF No. 125), and no other party disputes.

On February 12, 2013, Ulster Bank filed a petition with the Irish High Court to have the Debtor adjudicated "bankrupt".  See *In the Matter of a Petition for Adjudication of Bankruptcy by Ulster Bank Ireland Limited against Sean Dunne*, 2013 No. 798P, Republic of Ireland, High Court (2013) ("Irish Bankruptcy Proceeding").  Ulster Bank has been unable to serve the petition on the Debtor.  The Debtor is a citizen of Ireland, but he has resided in the United States with his family for the last three years.  A hearing in the Irish High Court had been scheduled for July 1, 2013, having been adjourned twice.[2]

On March 29, 2013, approximately six weeks after the commencement of the Irish Bankruptcy Proceeding, the Debtor commenced this chapter 7 case.  On that date Richard M. Coan was appointed the chapter 7 Trustee.  On May 17, 2013, Ulster Bank filed a motion for relief from the automatic stay.  On May 28, 2013, the Bank filed the subject Amended Motion for Limited Relief from Stay under 11 U.S.C. § 362(d)(1) ("MRFS").  In relevant part, that subsection provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for cause . . . .

11 U.S.C. § 362(d)(1).

On June 4, 2013 ("June 4th Hearing"), the Court granted Ulster Bank's MRFS over the Debtor's objection.  Ulster Bank's attorney was directed to draft and circulate a proposed order in accordance with the record of the June 4th Hearing.  The Court scheduled a hearing for June 11, 2013, to review the proposed order.  The order granting relief from the automatic stay for cause entered on June 12, 2013.  (*See* ECF No. 103; "Relief Order".)  On June 14, 2013, the Debtor filed a Notice of Appeal and the instant Motion to Stay.

---

[2] The original "bankrupt" adjudication hearing was scheduled for April 15, 2013. It was adjourned to May 13, 2013, when service was not perfected, and then again to July 1, 2013.  The July 1 hearing was adjourned to July 22, 2013.

### III. Discussion

#### A. *Final Order*

The Debtor asserts that the Relief Order is a final appealable order. The Trustee agrees. (*See* Trustee's Opp'n at 2, Part II(A).) Ulster Bank argues that the Relief Order is not a final order subject to appeal as it "does not resolve any of the substantive issues in this case, nor does it finally resolve any legal issue." (Ulster Bank's Opp'n at 2, ¶2; ECF No. 119.) All it does is provide narrowly tailored relief to permit Ulster Bank to request alternate means of service on the Debtor, allow it to participate in a "bankrupt" determination in the Irish High Court, and potentially participate in any proceeding for nominating an Irish bankruptcy representative. (*See id.* at 2, ¶2, 4, ¶6.) For the purpose of this analysis, the Court assumes, *arguendo*, that the Relief Order is a final order.

#### B. *Stay Pending Appeal*

Bankruptcy Rule 8005 governs motions for a stay pending appeal.

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge . . . must ordinarily be presented to the bankruptcy judge in the first instance. . . .

Fed. R. Bankr. P. 8005. The Second Circuit has established a four-part test for determining whether to grant a motion for stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

**In re World Trade Center Disaster Site Litig**., 503 F.3d 167, 170 (2d Cir. 2007); *see also In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (2d Cir. B.A.P. 1996) (quoting *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993)). The Second Circuit has also held that those factors should be evaluated on a "sliding scale" and "[t]he necessary 'level' or 'degree' of possibility of success will vary

according to the court's assessment of the other stay factors." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (citing *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002)). The moving party "bears the burden of showing entitlement to the stay," which is "a heavy burden". *In re Vincent Andrews Mgmt. Corp.*, 414 B.R. 1, 4 (D. Conn. 2009); *see also id.* at 8 (citing *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 659 (S.D.N.Y. 2005) (further citation omitted)).

The Court has concluded that the second *World Trade* factor, relating to irreparable injury to the applicant absent a stay, will be considered first and the other three factors will be considered together as they share a common predicate.

**(1)  *Irreparable Injury Absent Stay.***

The Court assigns one percent (1%) of the weight to this factor merely to recognize its existence. In analyzing the irreparable injury factor, a distinction must be made between the current undisputed facts when the Court entered the Relief Order and the Debtor's *currently*[3] stated concerns about *potential* future events in Ireland absent a stay pending appeal.

    (a)  Current undisputed facts

The current undisputed facts include:

(i)  On February 12, 2013, Ulster Bank filed the Irish Bankruptcy Proceeding in the Irish High Court in the Republic of Ireland which was captioned *In the Matter of a Petition for Adjudication of Bankruptcy by Ulster Bank Ireland Limited against Sean Dunne* and assigned the case number 2013 No. 798 P.[4]

(ii)  On March 29, 2013, the Debtor, a citizen of Ireland and a resident of the United States, commenced this chapter 7 case.

---

[3]  Since the entry of the Relief Order, the Debtor expressed concern about potential inconsistencies between proceedings in this Court and in the Irish High Court, and further expenses if the Irish Bankruptcy Proceeding continues.

[4]  The consequences of that filing, beyond the assignment by the Irish High Court of a case number and the scheduling of a hearing, is an open question.

(iii)  All of the Debtor's real property is located outside of the United States and primarily in Ireland.

(iv)  All of the debt on that real property, estimated to be approximately $745 million, is held by non-U.S. creditors.  (*See* Debtor's Schedules A & D, ECF No. 43.)

(v)  When the Debtor commenced this case on March 29th, simultaneously:

> – the automatic stay went into effect, *see* 11 U.S.C. § 362,

> – a bankruptcy estate was created and all of the Debtor's property, wherever located and by whomever held, became property of the estate, *see* 11 U.S.C. § 541(a), and

> – Richard M. Coan, Esq., was appointed the chapter 7 Trustee.

(vi)  As the Trustee, Attorney Coan has the exclusive statutory duty to administer the bankruptcy estate, *see* 11 U.S.C. § 704, and the estate's property is exclusively under his control, *see id.*; *see also generally In re MF Global Inc.*, 467 B.R. 726, 733 (Bankr. S.D.N.Y. 2012).

(vii)  As a result of seeking relief under chapter 7, with the Trustee being vested with all rights over non-exempt property, the Debtor's sole interest in this case is receiving a discharge of dischargeable debts, which may or may not be granted, *see* 11 U.S.C. § 727.

(viii)  The Debtor conceded that fact at the June 4th Hearing:

> THE COURT:         Okay.  What can the debtor get out of Chapter 7?
> [Debtor's Attorney]: Here?
> THE COURT:         Yes.
> [Debtor's Attorney]: A discharge.
> THE COURT:         Correct.
> [Debtor's Attorney]: That's right.
> THE COURT:         That's it.
> [Debtor's Attorney]: That is correct.

(June 4, 2013 Hr'g Tr. 47:1-9; ECF No. 106.)

(ix)  The Relief Order, which is the subject of the appeal and the instant Motion

to Stay, entered on June 12, 2013.  In relevant part, it provides:

> ORDERED that the automatic stay provided under 11 U.S.C. § 362(a) (the "Automatic Stay") is hereby modified pursuant to 11 U.S.C. § 362(d) to permit Ulster and/or its successors and assigns to take all actions necessary under Irish law **_to perfect service upon the debtor_** in the above-captioned case (the "Debtor") in relation to *In the Matter of a Petition for Adjudication of Bankruptcy by Ulster Bank Ireland Limited against Sean Dunne*, 2013 No. 798 P, Republic of Ireland, High Court (2013) (the "Irish Bankruptcy Proceeding"); and it is further
>
> ORDERED that the Automatic Stay is hereby modified pursuant to 11 U.S.C. § 362(d) to permit parties in interest to continue with the Irish Bankruptcy Proceeding and to take all actions necessary in connection with or relating to Ulster's application **_to have the Debtor adjudicated "bankrupt" in the Irish Bankruptcy Proceeding_**, provided however, that nothing in this Order shall deprive this Court of jurisdiction over the Debtor or over the property of the bankruptcy estate; and it is further
>
> ORDERED that the Automatic Stay is hereby modified pursuant to 11 U.S.C. § 362(d) to permit parties in interest, in the event that the Debtor is adjudicated "bankrupt" in the Irish Bankruptcy Proceeding, **_to attend and participate in any proceeding for nominating and/or voting in respect of the appointment of a trustee_** pursuant to section 110 of the Irish Bankruptcy Act of 1988, as amended, and to take all actions set forth under the laws of Ireland in connection therewith; . . .

(Relief Order; ECF No. 103 (bolded, italicized emphasis added).)

The Relief Order was specifically limited.  It does not have any effect on whether the Debtor is granted a discharge in this Court.  Accordingly, the Debtor will not be irreparably injured absent a stay.  His sole interest in this case will not be affected at all.

(b)  Concerns about *potential* future events

At the June 26, 2013, hearing on the instant Motion to Stay, the Debtor attempted to expand his interest in this case by arguing that if there are two bankruptcy proceedings, he might be put to additional expense and an Irish Bankruptcy Proceeding discharge might provide less protection than a discharge issued by this Court.  This

Court will not speculate on what the future will hold for the Debtor's narrow interest in this case or any interest he may have in the Irish Bankruptcy Proceeding. He may or may not be granted a discharge by this Court. He may or may not be adjudicated a "bankrupt" by the Irish High Court. Further, as the Trustee argued at the June 26th hearing, the Debtor's "parade of horribles" of what may occur if there is a dual proceeding in Ireland is "speculative". (*See* June 26, 2013 Audio File, beginning at 7:30; ECF 132.) Moreover, the Relief Order limits the relief afforded Ulster Bank and specifically provides:

> that except as *explicitly set forth herein the Automatic Stay shall not be modified or waived, and no party-in-interest in this case shall, except by leave of this Court, take any affirmative action in the Irish Bankruptcy Proceeding that violates the terms of the Automatic Stay.*

(Relief Order at 2-3 (decretal ¶5) (emphasis added).) Accordingly, the Debtor has not sustained the burden of showing that he will be irreparably harmed absent a stay pending appeal.

### (2) *Strong Showing that the Debtor is Likely to Succeed on the Merits; Injury to Others; Public Interest.*

The first, third and fourth *World Trade* factors are considered together because they share a significant common predicate. That is, the Trustee has written and stated in Court on several occasions that he supports the limited MFRS, and the basis for his position informs the analysis in the three remaining *World Trade* factors. Each of these factors will share one-third of the balance, *i.e.*, thirty-three percent (33%) each. It should be noted that the discussion about the asserted need for an evidentiary hearing, while discussed specifically in the "Strong Showing" factor section is applicable to and included in the analysis of the "Injury to Others" and the "Public Interest" factors.

(a) <u>Strong showing that the Debtor is likely to succeed on the merits</u>

After claiming in his Motion to Stay that *Sonnax*[5] was not applicable to the MRFS (Motion to Stay at 11-12),[6] the Debtor then stated, assuming *Sonnax* is applicable, "Ulster Bank submitted no evidence that satisfied [the *Sonnax*] burden and no findings were made to support such a conclusion."[7]  (*Id.* at 16.)  Ulster Bank objected, arguing that that issue cannot be raised for the first time by papers supporting the Debtor's appeal, and in any event, the bank did produce evidence that satisfied any burden it had.  *See infra* p.11.

To the extent that the Debtor is relying on Rule 52(a)(1), made applicable in adversary proceedings by Bankruptcy Rule 7052,[8] an analysis of its text is warranted. Rule 52(a)(1) states: "**In General**. . . .  the court must find the facts specifically and state its conclusions of law separately".  Fed. R. Civ. P. 52(a)(1) (emphasis added). Parenthetically, as noted below, a reference to that subsection is unavailing.  Moreover,

---

[5] *Sonnax Indus. Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus. Inc.)*, 907 F.2d 1280 (2d Cir. 1990).

[6] Paradoxically, at the June 4th Hearing and in opposing the MRFS, the Debtor invoked the *Sonnax* factors when he argued Ulster Bank had not established cause warranting relief from stay.  (*See* Hr'g Tr. 49:22-23.)

[7]. At the June 26, 2013 hearing on the Motion to Stay, that is, two weeks after the Relief Order entered and which is the subject of the underlying appeal, the Debtor's wife was permitted, over Ulster Bank's objection, to comment that, in her opinion, there should have been an evidentiary hearing on June 4, 2013.  That observation is in sharp contrast to her counsel's statement at the June 4th Hearing that he did not object to the Relief Order.  Rather, he was concerned that the Trustee might spend excessive estate funds in the administration of the estate, and he, therefore, sought a reference in the Relief Order to prevent that result.
    It is further noted that despite an inquiry from the Court to explain the basis on which the Debtor's wife qualified as a creditor, since she was not listed by the Debtor as such on his schedules, her attorney declined to substantiate that status, merely noting that it is a "sensitive" issue.  The Court has found nothing in the record to support her status as a party with a claim against the estate or that she is in any other way a party in interest.

[8] Although no mention was made of Bankruptcy Rule 9014(c), it is clear from the text of that rule that Rule 52 is applicable to contested matters.

a literal reading would result in unintended consequences, requiring evidentiary hearings in most if not all matters *even if there are no disputes on the isolated issues under consideration*. Arguably, margin orders or "so ordered" notations might be subject to challenge.

Rather, the appropriate rule for motion procedures is Bankruptcy Rule 7052(a)(3) which provides: "The court is not required to state findings or conclusion when ruling on a motion under Rules 12 or 56 or, unless these [bankruptcy] rules provide otherwise,[9] *on any other motion*." Fed. R. Bankr. P. 7052(a)(3) (emphasis added). Rule 4001, which related to the motion here, *i.e.*, the MRFS, does not require specific findings and conclusions.

In view of the Trustee's repeated statements in Court that he consented to the entry of the Relief Order, the Court concluded that an evidentiary hearing was not necessary. In essence, there was a consent order between the movant, Ulster Bank, and the Trustee, the only party that had the statutory responsibility to administer the estate's property.

If the Debtor's argument were to succeed, all he would have accomplished is a potential interference with the Irish Bankruptcy Proceeding during the period that this Court would hear the Trustee from a different location in the courtroom, *i.e.*, from the witness box rather than counsel table. It is inconceivable that any cross-examination by the Debtor's attorney would result in the Trustee reversing his position and agreeing that an Irish Bankruptcy Proceeding is not necessary.

Even if, *arguendo*, an evidentiary hearing was mandated, that mandate was satisfied. Ulster Bank proffered a document that the Irish Bankruptcy Proceeding was commenced on February 12, 2013 in the Irish High Court:

> The bankruptcy proceeding was filed on February 12, 2013. This Court can take judicial notice of that filing. It's a public filing. I have a copy of the petition here, which I can hand up as a courtesy if the Court would like. However, I don't believe, based on the objection, there's any dispute that that was actually filed, that the

---

9 *See, e.g.*, Rule 7065(b)(2) and (d)(1) (detailing the required contents of restraining orders).

> petition against Mr. Dunne was filed in Ireland on February 12, 2013.

(June 4, 2013 Hr'g Tr. 9:11-19 (ECF No. 106).) Indeed, as noted *supra* below, throughout the June 4th Hearing, the Debtor did not challenge that fact. Nor did any other party.

With Ulster Bank having made an initial showing of cause, with the Trustee's support (s*ee* Trustee's Opp'n at 5, ECF No. 125), the burden shifted to the Debtor. *See Sonnax*, 907 F.2d at 1285 ("The burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant [Ulster Bank] while Section 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property.") Section 362(g) provides:

> (g) In any hearing under subsection (d) . . . of this section concerning relief from the stay of any act under subsection (a) of this section—
>> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>> (2) the party opposing such relief has the burden of proof on all other issues.

The Debtor did not respond to the proffer. Nor did he request an opportunity to cross examine the Trustee. If the Debtor intended to challenge that existence of the Irish Bankruptcy Proceeding prior to the commencement of this case, the time to have raised that issue was at the June 4th Hearing when the Court heard arguments from counsel, granted the MRFS, and directed the preparation of a proposed order. At least such a challenge should have been made at the June 11th hearing, when the Court considered the objections to the proposed order. That scenario buttressed the conclusion that the Court was justified in granting the limited Relief Order.

The court also notes a reference to 11 U.S.C. §105(a) is warranted. That section provides in relevant part:

> The court may issue any order, . . . that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a

> party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, to prevent an abuse of process.

As repeatedly stated in this discussion, the Trustee has determined that "Irish bankruptcy proceedings will be *beneficial to the creditors* of the bankruptcy estate and *necessary for a complete and just administration of the assets* of the bankruptcy estate . . . ." (Trustee's Statement at 2, ¶5 (emphasis added).)  Thus, §105(a) may be utilized to assist the Trustee in performing his statutory duties.

Accordingly, as to the *World Trade* factor of "strong showing of a likelihood to succeed on the merits", there is none.

(b)  <u>Substantial injury to other parties interested in the proceeding</u>

The Debtor argues that no party will be injured if a stay pending appeal is granted.  The Trustee, who is the sole party in this case who has a statutory duty to administer the property of this chapter 7 case, disagrees, stating: "A stay pending appeal prevents [me] from performing [my] statutory duty of liquidating the estate as quickly as possible."  (Trustee's Opp'n at 12 (citing 11 U.S.C.A. § 704(a)(1).)  He also argues that a delay in liquidating the estate's property will cause the Debtor's creditors to suffer harm.  (*See id.* at 13.)

The Trustee is obligated by § 704 to administer this chapter 7 estate.  It is significant that, rather than challenge the MRFS in order to protect his right to administer the estate, the Trustee has embraced the limited Relief Order because he has determined an Irish Bankruptcy Proceeding will assist him in those § 704 duties.  The Debtor is hardly in a position to challenge the Trustee's assessment of what is in his best interest in performing his statutory duties on behalf of this bankruptcy estate.  As the Trustee stated:

> [The] "Irish bankruptcy proceedings will be *beneficial to the creditors* of the bankruptcy estate and *necessary for a complete and just administration of the assets* of the bankruptcy estate . . . ."

(Trustee's Statement at 2, ¶5 (emphasis added).)

> When [the Trustee] saw Ulster Bank's motion for relief from stay the Trustee's view on the motion was, what would be in the best interest of creditors in this case. And the [T]rustee concluded that it would be in the best interest of creditors to have an Irish bankruptcy case opened.
> * * *
> [T]he Trustee believes that he will need an Irish court in order to properly administer the case.

(June 4, 2013 Hr'g Tr. 32:8-12, 33:4-6.)

> [Ulster Bank has] the support of the bankruptcy estate [as the] Trustee sought (and seeks) the continuation of the Irish proceeding to assist him in the liquidation of the estate's assets. AS this court properly found, Irish assets, creditors, and law dominate this bankruptcy case. The marshaling and liquidation of the Debtor's assets will require the sale of assets in Ireland, a determination of creditors [*sic*] rights under Irish law, and the distribution of proceeds to creditors located primarily in Ireland. For these reasons, the representative of the United States bankruptcy estate, *the Trustee, supports a limited modification of the automatic stay* to permit an Irish court to appoint an estate representative to negotiate an ad hoc protocol for presentation to this court and to the Irish court.

(Trustee's Opp'n at 5-6 (emphasis added).). Accordingly, the Debtor has failed to met his burden on this factor.

    (c)  <u>Public interest</u>

Similarly, the Debtor fails to meet his burden on the "public policy" factor. He argues the public policy of providing him a fresh start through this country's bankruptcy laws would be undermined by allowing the Irish Bankruptcy Proceeding to go forward

pending appeal. He claims "he would be compelled to protect his *expected* Chapter 7 discharge by defending the insolvency proceeding in Ireland." (Motion to Stay at 19-20 (emphasis added).) The Debtor fails to state a basis for his "*expected* Chapter 7 discharge". (*Id.*) That expectation cannot be predicted at this time. Moreover, the limited relief granted by the Relief Order was to seek alternate service of Ulster Bank's petition and then to seek an adjudication that the Debtor is a "bankrupt" in Ireland. Nothing in the Relief Order implicates a challenge to the Debtor's hope of a getting a discharge from this Court.

Conversely, the Trustee asserts that public interest disfavors a stay pending appeal. The public policy that informs chapter 7 cases, mandates that the Trustee exercise his statutory authority over property of the estate for the benefit of creditors. Since the Relief Order is a mechanism to facilitate that authority by recognizing the interwoven interests of two sovereigns in this estate's property and creditors, the public interest would be best served by denying the Motion to Stay. (*See* Trustee's Opp'n at 13.)

### IV. Conclusion

For the foregoing reasons, IT IS ORDERED that the Debtor's Motion to Stay is DENIED.

DATED this 18th day of July 2013 at Bridgeport, Connecticut.

By the court

Alan H. W. Shiff
United States Bankruptcy Judge