**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

_____X
In re:                                 :
                                       :
Sean Dunne,                            :    Case No. 13-50484
                                       :    Chapter 7
         Debtor.                       :
_____X

*Appearances:*

| | | |
|---|---|---|
| Richard M. Coan, Esq. | : | For Richard M. Coan, Trustee |
| Timothy Miltenberger, Esq. | : | |
| Coan Lewendon Gulliver & Miltenberger, LLP | : | |
| 495 Orange Street | : | |
| New Haven, CT | : | |
| | | |
| Henry P. Baer, Esq. | : | For Ulster Bank Ireland Limited |
| Finn Dixon & Herling, LLP | : | |
| 177 Broad Street, 15th Fl. | : | |
| Stamford, CT | : | |
| | | |
| Thomas H. Curran, Esq. | : | For National Asset Loan |
| Peter Antonelli, Esq. | : | Management, Ltd. |
| LeClair Ryan PC | : | |
| One International Place, 11th Floor | : | |
| Bosyon, MA | : | |
| | | |
| Alec P. Ostrow, Esq. | : | For Gayle Killilea Dunne |
| Richard Chassin, Esq. | : | |
| Becker Glynn Muffly Chassin & Hosinski | : | |
| 299 Park Avenue | : | |
| New York, NY | : | |

Alan H. W. Shiff, United States Bankruptcy Judge:

**MEMORANDUM OF DECISION AND ORDER
ON TRUSTEE'S MOTION FOR ORDER**
(ECF NO. 476)

## I. Introduction

Richard M. Coan, the Chapter 7 trustee ("Trustee") of the bankruptcy estate of Sean Dunne ("Debtor"), has filed this motion for entry of an order (i) confirming the termination and inapplicability of the automatic stay, *see* § 362(a), or, alternatively, (ii) modifying the automatic stay, *nunc pro tunc*. ("Motion for Order"; *see* ECF No. 476.) The Trustee has stated that such an order would assist the High Court of Ireland as to the effect of the automatic stay, 11 U.S.C. § 362(a), on a proceeding which was commenced by an Irish official assignee, Christopher Lehane ("Official Assignee"), and which is currently pending in Ireland. Gayle Killilea Dunne ("Ms. Killilea"),[1] the Debtor's wife, objects.

The issue addressed by this ruling is whether the automatic stay prohibits the Irish Official Assignee from prosecuting an action he commenced against Ms Dunne, *i.e.*, *Christopher Lehane as Official Assignee in Bankruptcy and Gayle Killilea Dunne*, Record No. 2014/7820P ("OA Litigation"). For the reasons that follow, it does not.

## II. Background

The Court assumes familiarity with the record in this case and the multitude of proceedings therein.[2] The facts that follow are stated to provide context and

---

[1] Gayle Killilea Dunne is referred to as Ms Killilea by her attorney. The Court will adopt that designation.

[2] *See e.g., In re Dunne*, No. 13-50484 (AHWS), 2013 WL 3779979, slip op. (Bankr. D. Conn. July 18, 2013 (denying stay pending appeal of limited relief from stay order) ("Denial of Stay Decision"); *Dunne v. Ulster Bank Ireland Ltd. (In re Dunne)*, No. 3:13-cv-0996, 2014 WL 941453 (JBA), slip op. (D. Conn. Mar. 11, 2014) ("Appeal Dismissal Ruling").

underscore the basis for the conclusions reached herein.

The Debtor is a citizen of Ireland and currently resides with in Greenwich, Connecticut.  Since the 1990s, the Debtor, primarily through his businesses, DCD Builders, Limited, and its subsidiaries (collectively, "DCD"), has been a real estate developer in Ireland.  Over the years, Ulster Bank ("Ulster") loaned substantial sums of money (over €400 million) to DCD in Ireland.  The aggregate amount of debt owed by the Debtor is estimated to exceed €700 million.  In 2008 and 2009, the National Asset Loan Management, Ltd ( "NAMA") acquired a number of loans given to DCD by other lenders.

Substantially all of the Debtor's real property, whether owned directly or through a corporate entity, is located in Ireland and is over-encumbered by creditors' secured claims, with Ulster and NALM having the largest of such claims.  Consequently, it has been estimated that Ulster and NAMA hold 97% of the unsecured claims.  (*See* Nov. 17, 2015 Hr'g Tr., ECF No. 503 ("Nov. 17 Hr'g Tr.").)  In 2011 and 2012, Ulster and NAMA, respectively, caused receivers to be appointed in Ireland over all of their real property collateral.

On February 12, 2013, Ulster filed a petition with the High Court of Ireland to have the Debtor adjudicated a "bankrupt".  See *In the Matter of a Petition for Adjudication of Bankruptcy by Ulster Bank Ireland Limited against Sean Dunne*, 2013 No. 798P, Republic of Ireland, High Court (2013) ("Irish Bankruptcy Proceeding"). On March 29, 2013, approximately six weeks after the commencement of the Irish Bankruptcy Proceeding, the Debtor commenced this Chapter 7 case.  See 11 U.S.C.

§101 *et seq.* On that date, the automatic stay under § 362(a)[3] became effective and a bankruptcy estate was created consisting of all of the Debtor's property and interests "wherever located and by whomever held". *See* § 541(a). Also on that date, Richard M. Coan was appointed the Trustee to, *inter alia*, administer the estate's property. *See* § 704(a). Significantly, Ms. Killilea is not a co-debtor, the Debtor did not identify her as a creditor on his bankruptcy schedules, and she has not filed a proof of claim in this case.

On May 17, 2013, in this Court, Ulster sought limited relief from the automatic stay to:

(A) "take all actions necessary under Irish law to perfect service upon [the

---

[3] In relevant part, § 362(a) of the Bankruptcy Code provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> * * *

11 U.S.C. § 362(a).

Debtor] . . . in [the Irish Bankruptcy Proceeding ]" (*see* ECF No. 103 at 2

(Order Granting Relief from Stay ("RFS Order"));

(B) have the Debtor adjudicated a "bankrupt" under Irish law; and

(C) if the Debtor was adjudicated a bankrupt, to allow Ulster to participate in any proceeding for nominating and/or voting in respect of the appointment of a trustee under Irish law.

(*See* ECF No. 67[4] (Ulster's Motion for Limited Relief from Stay ("MRFS")).)

On May 31, 2013, the Trustee filed a statement in partial support of Ulster's MRFS that

> [b]ecause [he] has concluded that [the] Irish bankruptcy proceedings will be beneficial to the creditors of the bankruptcy estate and necessary for a complete and just administration of the assets of the bankruptcy estate, [he] supports the Motion to the extent that the requested relief will allow for the appointment of an estate representative in the Irish Proceeding and the negotiation of an *ad hoc* protocol for presentation to this Court and to the Irish High Court.

(*See* ECF No. 80 at 2, ¶5.)  On June 3, 2014, the Debtor objected.  (*See* ECF No. 86.) It is noteworthy that Ms. Killilea did not object.  (*See* Denial of Stay Decision at 9, n.7.)

On June 4, 2013, the Court conducted a hearing during which the Debtor conceded that the only interest he had in this case was a possible discharge.  (*See* June 4, 2013 Hr'g Tr. at 47:1-9; ECF No. 106.)  That is, the Debtor admitted that he had no pecuniary interest in the property of his bankruptcy estate.  The Debtor has since waived any right he might have to a discharge.  (*See* ECF No. 376 (order approving

---

[4] An amended motion was filed on May 28, 2013 to correct the motion's caption. It is the amended MRFS which is cited herein.

voluntary waiver of discharge).)

On June 12, 2013, the Court overruled the Debtor's objection and entered the RFS Order. (*See* ECF No. 103.) Significantly, the RFS Order included a directive that

> Richard M. Coan, Trustee of the Bankruptcy Estate of the Debtor, shall use his good faith reasonable judgment to minimize the costs and expenses he incurs in connection with matters that he believes, in his good faith reasonable judgment, are more appropriately resolved in concert with the representative in the Irish Bankruptcy Proceeding, if any;
> . . .

(RFS Order at 3.)

On June 14, 2013, the Debtor appealed (*see* ECF No. 111) and filed a motion for a stay pending an appeal (*see* ECF No. 113). The Trustee opposed that motion (*see* ECF No. 125), as did Ulster and NAMA (*see* ECF Nos. 119 and 121, respectively).

On July 18, 2013, in an order overruling the Debtor's motion, the Court stated:

> The Trustee . . . [persuasively argued that] "[a] stay pending appeal prevents [me] from performing [my] statutory duty of liquidating the estate as quickly as possible." (Trustee's Opp'n at 12 (citing 11 U.S.C.A. § 704(a)(1).) He also argues that a delay in liquidating the estate's property will cause the [Dunne's] creditors to suffer harm. (*See id.* at 13.)
> . . . It is significant that, rather than challenge [Ulster's] MRFS in order to protect his right to administer the estate, the Trustee has embraced the limited Relief Order because he has determined an Irish Bankruptcy Proceeding will assist him in those § 704 duties. The Debtor is hardly in a position to challenge the Trustee's assessment of what is in his best interest in performing his statutory duties on behalf of this bankruptcy estate. As the Trustee stated [through counsel]:
>
> * * *
> > [he] believes that he will need an Irish court in order to properly administer the case.

>    ([quoting] June 4, 2013 Hr'g Tr. 32:8-12, 33:4-6.)
>
> > [Ulster Bank has] the support of the bankruptcy estate [as the] Trustee sought (and seeks) the continuation of the Irish proceeding to assist him in the liquidation of the estate's assets. As this court properly found, Irish assets, creditors, and law dominate this bankruptcy case. The marshaling and liquidation of the Debtor's assets will require the sale of assets in Ireland, a determination of creditors [*sic*] rights under Irish law, and the distribution of proceeds to creditors located primarily in Ireland. For these reasons, the representative of the United States bankruptcy estate . . . *supports a limited modification of the automatic stay* to permit an Irish court to appoint an estate representative to negotiate an ad hoc protocol for presentation to this court and to the Irish court.
>
>    ([quoting] Trustee's Opp'n at 5-6 (emphasis added)).

(Denial of Stay Decision at 12-13.) On March 11, 2014, U.S. District Judge Arterton granted Ulster's motion to dismiss the Debtor's appeal of the RFS Order as moot. *See* Appeal Dismissal Ruling, 2014 WL 941453.

On July 29, 2013, while the Debtor's appeal was pending, the High Court of Ireland adjudicated him a "bankrupt" and "by operation of Irish law, all of his property vested in the Official Assignee for the benefit of Dunne's creditors." *Id.*, 2014 WL 941453, at *3. On December 6, 2013, the High Court of Ireland's bankrupt ruling was affirmed. *See id.* Christopher Lehane was chosen as and continues to be the Official Assignee of the Irish bankruptcy estate. Thus, there are currently two bankruptcy cases: an Irish Bankruptcy Proceeding, pending in the High Court of Ireland, and a U. S bankruptcy case, pending in this Court. Both have the same debtor and estates

consisting of the same property.

On September 5, 2014, the Official Assignee commenced the OA Litigation. That action alleges that the Debtor made fraudulent transfers of property to Ms. Killilea. As noted, those claims are governed by Irish law and evidence regarding those transfers is predominately located in Ireland. (*See* Nov. 17, 2015 Hr'g Tr.) The Trustee has repeatedly expressed his support of the OA Litigation, arguing that it will benefit the creditors since it seeks the recovery of assets. (*See* Trustee's Motion for Order at p.3, ¶¶11-12.) He has been actively supporting the OA Litigation by working constructively and cooperatively with the Official Assignee.[5] (*See id.*)

> The OA Litigation reduces the costs of administration of the bankruptcy estate of Sean Dunne because the OA Litigation involves transactions that occurred in Ireland, involves witnesses that are located in Ireland, and involves documents that are located in Ireland.

(Trustee's Motion for Order at 4, ¶12.) The Trustee has repeatedly advised this Court that he is in frequent communication with the Official Assignee, and that they are cooperating with each other. The Court has no basis to question that representation. Moreover and of particular significance, the Trustee has stated that "the Official Assignee has agreed with the Trustee that any recoveries from the OA Litigation will not be disbursed without an appropriate order of this Court." (*Id.*)

---

[5] It is noteworthy that on several occasions, Ms. Killilea's counsel requested this Court to urge the parties to work towards an effective, efficient, and economical resolution of both this bankruptcy case and the Irish Bankruptcy Proceeding. Ms. Killilea has apparently abandoned her stated initiative as she now seeks to thwart the Trustee's efforts to achieve that objective.

In the High Court of Ireland, Ms. Killilea has filed a motion to dismiss the OA Litigation, arguing that it is oppressive and in violation of the automatic stay. Her Irish counsel has urged the High Court of Ireland to conduct an evidentiary hearing to determine whether the automatic stay is applicable to the Trustee and the Official Assignee. (*See* Oct. 27, 2015 Hr'g Tr., *Lehane and Dunne*, Record No. 2014/7820P, Irish High Court, quoted in Trustee's Motion for Order at 6.) It appears that Ms. Killilea's counsel's theory is that if the automatic stay applies to both the Trustee and Official Assignee, then they both would need relief from the stay to recover property they claim belongs to the Debtor's bankruptcy estates for the benefit of the creditors of those estates. (*See id.* at 6 and note 1.) Since the Official Assignee did not get relief from automatic stay, the theory goes, he has violated it, and the OA Litigation should be dismissed. (*See id.* at 6.) The Official Assignee has opposed that proposition.

On November 9, 2015, the High Court of Ireland commenced a hearing. (*See* Nov. 9, 2015 Hr'g Tr., *Lehane and Dunne*, Record No. 2014/7820P, Irish High Court, attached to Killilea's Reply, ECF No. 483.) The Official Assignee was requesting a continuance of another hearing on the basis that the Trustee had filed the instant Motion for Order and requested an expedited hearing on the Motion.[6]

Ms. Justice Costello stated, *inter alia*:

> It seems to me that quintessentially Judge Shiff is the singularly best placed person both legally and factually to decide whether or not [the RFS O]rder has been breached. . . . . Clearly the decision of Judge Shiff in relation to his own

---

[6] This Court understands the November 9, 2015 hearing to have been on the Official Assignee's request to continue another hearing on Ms. Killilea's application for cross-examinations of U.S. Attorneys Miltenberger and Ostrow.

> order will be dealt with before I will be in an position to deliver any judgment which I may be giving in relation to [Killilea's cross-examination] motion that is currently listed to resume for hearing before me tomorrow. In those circumstances it seems to me that it would be a risk of causing injustice, not to say a confusion and given to conflicting decisions if I were not to await the outcome of the decision for a short while.

(Nov. 9, 2015 Hr'g Tr. at 20.) Accordingly, Ms. Justice Costello continued Ms. Killilea's cross-examination motion, for tracking purposes, until November 17, 2015. (*See id.* at 22.)

III.  Discussion

*A. Standing*

It is beyond peradventure that the Debtor has no pecuniary interest in this case and, therefore, has no standing in this case to oppose the Trustee's Motion for Order. *See In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000); *Desormes v. Charlotte School of Law (In re Desormes)*, 497 B.R. 390, 395 (D. Conn. 2013); *In re First Connecticut Consulting Group, Inc.*, Nos. 02-50852, 02-51167, 2014 WL 5092269, at *4, slip op. (Bankr. D. Conn. Oct. 9, 2014), *dismissed*, *Licata v. Coan and Chorches*, No. 3:14-cv-1754 (MPS), slip op. (D. Conn. Sept. 22, 2015) (because debtor lacked standing, appeal dismissed). The Debtor has not claimed that he has standing to participate in the administration of his bankruptcy case. Ms. Killilea is neither a creditor not a co-debtor; so, she is in no better position. Ms. Killilea's U.S. Counsel, Attorney Ostrow, has conceded that if this Court rules against her on standing, she has no basis to oppose the Trustee's Motion for Order. (*See* Nov. 17, 2015 Hr'g Tr.) *See In re Fiber Optek Interconnect Corp.*, Case No. 05-30045, 2009 WL 3074605, *6 (Bankr. S.D.N.Y.

Sept. 23, 2009); *In re Silverman*, 42 B.R. 509, 516-17 (Bankr. S.D.N.Y. 1984) ("the automatic stay operates in favor of debtors and estates (represented by trustees and debtors-in-possession) only" (citation omitted)); *see also In re Pecan Groves of Arizona*, 951 F.2d 242, 245 (9th Cir. 1991) (stating "language from many cases indicates that, if the trustee does not seek to enforce the protections of the automatic stay, *no other party may challenge acts purportedly in violation of the automatic stay*" (emphasis added)).

Attorney Ostrow, however, argues that Ms. Killilea does have standing to argue that the automatic stay has been violated by the OA Litigation because she has an interest in defending her claim that the transfer of property from the Debtor to her was legitimate. That argument is a transparent attempt to obfuscate the stark distinction between Ms. Killilea's standing to oppose an action which challenges transfers to her and her lack of standing to interfere with the Trustee's statutory duties to administer the Debtor's insolvent Chapter 7 bankruptcy estate for the benefit of its creditors. Accordingly, the Court concludes that Ms. Killilea does not have standing to argue that the automatic blocks the OA Litigation. Having reached that conclusion, and mindful that Ms. Killilea's attorney conceded that without standing there would be no basis to oppose the Trustee's Motion for Order, a discussion of the reach of the automatic stay may, nonetheless, be useful to the High Court of Ireland.

*B. Applicability of the Automatic Stay*

As the Second Circuit has stated, the purpose of the automatic stay is to protect a debtor and his estate from actions of individual creditors. *See In re Sonnax Indus.*, 907 F.2d 1280, 1285-86 (2d Cir. 1990) (further citation omitted). Since the Debtor waived his discharge, the automatic stay does not apply to him. *See* § 362(c)(2)(C). Further, since there was an inquiry in High Court of Ireland as to whether the automatic stay applies to the Trustee, it does not. Indeed, to the contrary, the Trustee has a duty, *inter alia*, to "collect and reduce to money the property of the estate . . ." *See* § 704(a)(1). The automatic stay, however, remains in effect as to any action or proceeding by creditors to affect the property of the estate. *See* § 362(c)(1).

The issue then is whether the automatic stay applies to the Official Assignee who is also attempting to bring property into the Debtor's Irish Bankruptcy Proceeding estate and, therefore, into the Debtor's Chapter 7 bankruptcy pending in this Court. Thus, the Trustee seeks an order that the automatic stay did not preclude the Official Assignee from commencing the OA Litigation and that it does not prevent him continuing to prosecute that action. For the reasons that follow, the Court concludes that the automatic stay did not, and does not, apply to the OA Litigation.

It is an undeniable fact that the Official Assignee has targeted the same properties which are part of both Irish Bankruptcy Proceeding and the U.S. bankruptcy case, but are located in Ireland and subject to Irish law. It is equally undeniable that it would be duplicative and more costly for the Trustee, as well as detrimental to the holders of allowed claims in this case, to prosecute his adversary proceeding, Adv. Pro.

No. 15-5020, against Ms. Killilea in this country.  It is useful to repeat that the Trustee and the Official Assignee have agreed that any recovery by the Official Assignee will not be distributed by him without an appropriate order of this Court.  Thus, the only question is whether the Trustee would have to seek and obtain relief from the automatic stay in order for the Official Assignee to continue his prosecution of the OA Litigation.

Ms. Killilea's attorney's effort to achieve that result is a thinly veiled and ineffective attempt to shift the attention of this Court and of the High Court of Ireland away from the mandates of the Bankruptcy Code in this country.  Put another way, Ms. Killilea's attorney's argument that he is relying on bankruptcy law for his assertion that the Trustee is required to get relief from the automatic stay is employing a tactic which is frustrating and delaying the efficient and "expeditious[]" administration of this case, *see* § 704(a)(1), and, consequently, the administration of the Irish Bankruptcy Proceeding.

To hold otherwise would elevate form over substance.  The Trustee has correctly concluded that it would be consistent with his statutory duties here to rely on the Official Assignee's attempt to pursue the two estates' shared properties.  That symbiotic relationship is well-documented in the record of this case.  The Trustee and the Official Assignee are acting together and are, in essence, *de facto* co-administrators of each other, working for the same purpose.  At the November 17, 2015 hearing on the instant Motion for Order, NAMA's attorney characterized Ms. Killilea's position regarding the automatic stay as "absurd".  That observation is appropriate.

*C. Relief from Stay per § 362(d)(1), for cause*[7]

That aside, the Court concludes that there is cause to grant relief from automatic stay to permit the Official Assignee to continue prosecuting the OA Litigation. What the Trustee has done is yield the pursuit of property to the Official Assignee, rather than independently prosecute a duplicative and expensive action against Ms. Killiliea. Moreover, having the Official Assignee prosecute his OA Litigation is consistent with this Court's RFS Order and the stated wishes of Ms. Killilea that the two estates be administered in a coordinated, efficient manner.

Consideration of the twelve *Sonnax* factors, which are non-exhaustive considerations for determining whether cause exists to lift the stay, leads the Court to the same conclusion. *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990); *see also In re Anton,* 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992) (all twelve *Sonnax* factors not necessarily involved or required to be equally weighed). They are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the

---

[7] Section 362(d)(1) of the Bankruptcy Code provides in relevant part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> * * *

11 U.S.C. § 362(d)(1).

necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). To the extent that the *Sonnax* factors apply here, they overwhelmingly support the Trustee's requested modification of the automatic stay. The OA Litigation permits a complete resolution of the issues. It does not interfere with, but rather complements the U.S. bankruptcy case. It involves a fiduciary in the sense that the Official Assignee represents all creditors in the Irish Bankruptcy Proceeding who are the same creditors here. It is before a specialized tribunal (*i.e.*, the High Court of Ireland, applying Irish law). It does not prejudice the interests of creditors in this case, and it promotes the interests of judicial economy.

D.  Nunc Pro Tunc *Relief*

Looking at this case holistically and in conjunction with the Irish Bankruptcy Proceeding, the facts, as discusseded above, make it apparent that *nunc pro tunc* relief sought by the Trustee is appropriate to validate what, if anything, the Official Assignee

has achieved in the OA Litigation. *See Koutsagelos v. PII SAM, LLC*, No. 12-cv-1703 (NGG) 2013 WL 2898120, at *4 (E.D.N.Y. June 13, 2013) (bankruptcy courts should adopt a holistic approach when considering requests for *nunc pro tunc* stay relief); *see also In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999). Factors courts within the Second Circuit consider when determining whether circumstances are sufficiently compelling to warrant retroactive relief, include:

> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

*In re Stockwell,* 262 B.R. 275, 281 (Bankr. D. Vt. 2001); *see also In re Marketxt Holdings, Corp.,* 428 B.R. 579, 587 (S.D.N.Y. 2010).

Factor (1): As the Trustee persuasively argues, while the Official Assignee had actual knowledge of the Debtor's bankruptcy filing here, he also had actual knowledge that the Trustee was supporting and affirmatively assisting in the OA Litigation. Regarding Factor (2): The Trustee has expressed a suspicion that the Debtor filed this case under Chapter 7 rather than Chapter 15 as a strategy to block Ulster's attempt to have him adjudicated "bankrupt" in Ireland. In view of Ms Killilea's tactic, as described above, that suspicion is justified. (*See* Adv. Pro. No. 15-5019, July 14, 2015 Hr'g Tr. at 26 (ECF No. 118).) Factors (3) and (4) are not applicable. Factor (5) is applicable: The Court's RFS Order directing the Trustee to work in concert with the Official

U:\CASES\2  Major Pending Cases\DUNNE, SEAN[2013] (Ch. 7)\4_AP_CM FOLDERS\Ts Mtn re Effect of Stay (Nov. 2015)\13-50484 (Dunne)(Ruling on Ts Mtn.Re.Effect.Stay)(11.25.15)(FINAL).wpd

Assignee (*see* RFS Order at 3) is within the penumbra of this factor. More to the point, the Court has concluded that the Trustee appropriately yielded to the Official Assignee so that the Official Assignee could attempt to collect property and share with the Trustee any success achieved by the OA Litigation. Thus, there is no doubt but that grounds existed for, and this Court would have, granting a motion for relief from the automatic stay if one had been filed before the Official Assignee commenced the OA Litigation. As to Factor (6), the Court agrees with the Trustee that a lack of stay relief will be detrimental to all creditors of the estate. Addressing Factor (7): The Trustee is a fiduciary acting for the benefit of the creditors. Ulster and NAMA, who hold 97% of the unsecured claims, support the Trustee's Motion for Order and his *nunc pro tunc* request. Finally, the Trustee has reasonably relied on the Official Assignee to pursue the OA Litigation by not pursuing that litigation himself, and he persuasively argues that a RFS order *nunc pro tunc* would be helpful by thwarting any effort by Ms Killilea to frustrate the administration of this case and the Irish Bankruptcy Proceeding.

### IV.  Conclusion

Both this Court and the High Court of Ireland are cognizant of the principles of comity and have each proceeded in a manner which is respectful of that principle. The integrity of the U.S. bankruptcy system, together with the respect for the High Court of Ireland and its interests in the efficient administration of the corresponding Irish Bankruptcy Proceeding, requires an order that will promote the efficient management of

U:\CASES\2  Major Pending Cases\DUNNE, SEAN[2013] (Ch. 7)\4_AP_CM FOLDERS\Ts Mtn re Effect of Stay (Nov. 2015)\13-50484 (Dunne)(Ruling on Ts Mtn.Re.Effect.Stay)(11.25.15)(FINAL).wpd

this case and hopefully provide assistance to the High Court of Ireland.   Accordingly,

    **IT IS ORDERED:**

(1)    The automatic stay is not in effect as to the Debtor;

(2)    Ms. Killilea has no standing to assert a violation of the automatic stay;

(3)    The automatic stay does not prohibit the Official Assignee from prosecuting the OA Litigation;

(4)    The Trustee's alternative motion for relief from stay under § 362(d)(1) of the Bankruptcy Code is granted; and

(5)    The Trustee's request that the relief from stay be effective *nunc pro tunc* to the date of the commencement of the OA Litigation is granted.

Dated this 25th day of November 2015 at Bridgeport, Connecticut.

*Alan H. W. Shiff*
Alan H. W. Shiff
United States Bankruptcy Judge